IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MANUFACTURERS COLLECTION COMPANY, LLC,** | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:12-CV-0853-L** |
| | § | |
| **PRECISION AIRMOTIVE, LLC and PRECISION AIRMOTIVE HOLDINGS, LLC,** | § | |
| | § | |
| | § | |
| | § | |
| Defendants and Third-Party Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| **LYCOMING ENGINES**, an unincorporated operating division of **AVCO CORPORATION**, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Third-Party Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: Third-Party Defendant AVCO Corporation's Motion for Summary Judgment, filed May 2, 2014 (Doc. 165); Manufacturers Collection Company, LLC's Motion for Partial Summary Judgment, filed May 2, 2014 (Doc. 170); Plaintiff MCC's and Third-Party Defendant AVCO/Lycoming's Joint Motion to Exclude Defendant/Third-Party Plaintiff Precision's Experts Elizabeth Erickson and James Erickson, filed May 2, 2014 (Doc. 168); and Precision's Motion for Summary Judgment Against MCC and Partial Summary Judgment Against AVCO, filed July 11, 2014 (Doc. 220).  Having considered the motions, responses, replies, pleadings, record, evidence, and applicable law, the court: **grants** Third-Party Defendant AVCO Corporation's Motion for Summary Judgment (Doc. 165); **denies** Manufacturers Collection Company, LLC's Motion for

Partial Summary Judgment (Doc. 170); **denies as moot** Plaintiff MCC's and Third-Party Defendant

AVCO/Lycoming's Joint Motion to Exclude Defendant/Third-Party Plaintiff Precision's Experts

Elizabeth Erickson and James Erickson (Doc. 168); and **grants in part** and **denies in part**

Precision's Motion for Summary Judgment Against MCC and Partial Summary Judgment Against

AVCO (Doc. 220).

## I.    Factual Background and Procedural History[1]

### A.    The *Pridgen* Lawsuit

In 2001, AVCO Corporation ("AVCO") was sued in Pennsylvania in a products liability

action that arose from the 1999 crash of a Piper Cherokee single-engine aircraft. *See Pridgen, et al.

v. Parker Hannifin, et al.*, in the Court of Common Pleas of Philadelphia County, Pennsylvania, in

the July Term, 2001, Cause Nos. 3838 & 4008.   The aircraft, en route from Wisconsin to

Pennsylvania, crashed shortly after takeoff from an airport in Ohio, where it had stopped to refuel.

Four of the aircraft's five occupants (including the pilot) were killed, and the remaining occupant,

a minor, suffered severe injuries.   *See generally Pridgen v. Parker Hannifin Corp.*, 2006 WL

6314725, at *1 (Pa. Ct. Com. Pl. Apr. 10, 2006); *Pridgen v. Parker Hannifin Corp.*, 905 A.2d 422

(Pa. 2006).  The surviving spouses of three of the decedents and the parent of the injured minor (the

"*Pridgen* plaintiffs") asserted claims of negligence, strict liability, and breach of express and implied

warranties, and sought compensatory and punitive damages.  App. in Supp. of Precision's Mot. for

Summ. J. 41-67 ("Precision Summ. J. App.")  (Doc. 222) (*Pridgen* Amended Complaint).   The

*Pridgen* plaintiffs alleged that AVCO manufactured the defective engine (which included the fuel

---

[1] In setting forth the summary judgment evidence, the court views all evidence in the light most favorable to the nonmoving party.  *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  The evidence is undisputed unless otherwise noted.

**Memorandum Opinion and Order – Page 2**

delivery system and related components), which caused the aircraft to lose power and crash shortly after takeoff. *See id.* They also alleged that AVCO and other defendants had knowledge of the alleged defects and engaged in intentional misrepresentations, concealment, and withholding of information relative to these defects. *See id.* Precision was not a party to the *Pridgen* lawsuit.

The *Pridgen* case was tried to a jury from March 19, 2010, to April 16, 2010. App. in Supp. of MCC's Mot. for Partial Summ. J. 254 ("MCC Summ. J. App.") (Doc. 173-2) (*Pridgen* Trial Work Sheet). The jury returned a special verdict in favor of the *Pridgen* plaintiffs on all questions, finding: that AVCO had "knowingly misrepresented, concealed, or withheld required information from the Federal Aviation Administration that is causally related to the harm Plaintiffs suffered"; that AVCO was negligent, and that such negligence "was a factual cause of the accident"; and that AVCO had engaged in conduct "that was malicious, wanton, willful or oppressive, or show[ed] reckless indifference to the interests of others[.]" *Id.* at 256-60 (*Pridgen* Verdict ¶¶ 1, 6, 7 & 12). The jury also found that the "carburetor in the accident aircraft was defective[,]" and that the "defective condition of the carburetor in the accident aircraft was a factual cause of the crash" that resulted in the *Pridgen* plaintiffs' harm. *Id.* (*Pridgen* Verdict ¶¶ 2 & 3). The jury assigned 100% of the fault for the accident to AVCO, and no fault to the deceased pilot, Lendon Pridgen. *Id.* (Pridgen Verdict ¶ 10). The jury awarded the *Pridgen* plaintiffs $88,700,000 in damages, which included $24,700,000 in compensatory damages (*id.* at 259, *Pridgen* Verdict ¶ 11) and $64,000,000 in punitive damages. *Id.* at 262 (*Pridgen* Punitive Damages Verdict ¶ 1).

### B.    Settlement of *Pridgen* Lawsuit & Assignment of Recovery Rights to MCC

Prior to entry of final judgment, AVCO's insurers settled with the *Pridgen* plaintiffs. Precision Sealed Summ. J. App. 90-102 (*Pridgen* Settlement) (Doc. 223). AVCO's insurers then

assigned the rights of recovery from the *Pridgen* settlement to AVCO, who in turn assigned such rights to Manufacturers Collection Company, LLC ("MCC"), a Texas-based limited liability company formed for purposes of filing the instant lawsuit. MCC Summ. J. App. 263-65; 266-68.[2] Specifically, on February 21, 2012, MCC filed a Certificate of Formation in Texas as a limited liability company. *Id.* at 266-68 (MCC's Cert. of Formation). On February 23, 2012, AVCO assigned its rights of recovery from the *Pridgen* settlement to MCC, retaining a 75% interest in any recovery made by MCC. *See id.* at 263-68. MCC filed this lawsuit on February 27, 2012. *See* Pl.'s Orig. Pet. (Notice of Removal, Doc. 1-3). On April 10, 2012, MCC's articles of organization were executed by Al Kroemer, MCC's sole member and a partner at Cantey Hanger, the law firm representing AVCO in this action. Precision Summ. J. App. 73.

### C.    The Instant Lawsuit

#### 1.    *Summary of Parties' Allegations*

On February 27, 2012, MCC filed this indemnification action against Precision Airmotive, LLC and Precision Airmotive Holdings, LLC ("Precision") in the 44th Judicial District Court of Dallas County, Texas, seeking to recover for the losses AVCO incurred in *Pridgen*. MCC seeks indemnification under common law and under Texas Civil Practice and Remedies Code § 82.002, which provides that "a manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action . . ." Tex. Civ. Prac. & Rem. Code § 82.002. *See* Pl.'s Orig. Pet. ¶¶ 14-21. MCC alleges that AVCO was a manufacturer of piston engines for fixed wing aircraft and helicopters, and each of its engines required a carburetor which contained fuel control and fuel delivery components. *See* Pl.'s Orig. Pet. ¶ 9 (Notice of Removal, Doc. 1-3). MCC alleges that

---

[2] Precision disputes the validity of the assignments. *See* Precision Summ. J. Br. 6-7 (Doc. 221).

Precision manufactured and sold to AVCO one of the aircraft engine's components, the carburetor, which AVCO installed on the *Pridgen* aircraft's engine. MCC further alleges that Precision, as the alleged manufacturer of the defective component part, owes a duty to indemnify AVCO under Texas statutory law and common law for the losses AVCO incurred in *Pridgen*. *See id.* ¶¶ 6, 20.

On March 22, 2012, Precision removed the action to this court asserting federal subject matter jurisdiction under 28 U.S.C. § 1332, that is, that complete diversity of citizenship exists between the parties and the amount in controversy, exclusive of costs and interest, exceeds $75,000. *See* Notice of Removal (Doc. 1). On April 12, 2012, Precision filed its Answer, denying, among other things, that it manufactured or sold the allegedly defective carburetor. Precision Ans. ¶ 11 (Doc. 8). Precision asserts numerous affirmative defenses, contending, among other things, that Texas law does not apply, that AVCO's adjudicated negligence or fault for the *Pridgen* plaintiffs' injuries constitutes a bar to this action, that MCC is collaterally estopped from re-litigating claims and issues that AVCO was not negligent, as this issue was fully litigated and finally resolved on the merits unfavorably, and that MCC's action is untimely. *See id.* (Affirmative Defenses 5, 7, 8, 9).

On April 26, 2012, Precision, in turn, filed a third-party complaint against AVCO for statutory indemnity, alleging that "MCC's Original Petition is a 'product[s] liability action' under Texas Civil Practice and Remedies Code § 82.001(2) because it is a claim against an alleged seller for damages arising out of personal injuries and death allegedly caused by a defective product." Third-Party Compl. ¶ 22 (Doc. 9). Precision alleges that it was AVCO's engine, not the carburetor, that was alleged to have been defective by the *Pridgin* plaintiffs in the *Pridgen* complaint. *Id.* ¶ 25. Precision seeks to recover its alleged losses (attorney's fees and costs) sustained in defending this case against MCC. *Id.* ¶ 31.

**Memorandum Opinion and Order – Page 5**

### 2.      Procedural History

On January 16, 2013, the court administratively closed this case following Precision's notice of bankruptcy.  On April 26, 2013, on MCC's motion, the court reopened the case and issued an amended scheduling order.  On July 3, 2013, Precision filed a motion for judgment on the pleadings.  MCC sought leave to amend its pleadings, which the court granted.  On August 26, 2013, MCC filed its First Amended Complaint, thereby mooting Precision's pending motion.  On September 16, 2013, Precision moved to dismiss MCC's First Amended Complaint.  MCC again filed a motion for leave to amend its pleadings, which the court granted, again mooting Precision's motion.  On November 15, 2013, MCC filed its Second Amended Complaint, the live pleading.  (Doc. 107).  On December 4, 2013, Precision filed a motion to dismiss the Second Amended Complaint.  While this motion was pending, the parties received extensions of the dispositive motion deadline to conduct discovery.

### 3.      The Pending Motions

On May 2, 2014, MCC filed its Motion for Partial Summary Judgment seeking summary judgment on its statutory indemnification claim against Precision.  (Doc. 170).  In support, MCC argues it is entitled to summary judgment because "there are no material fact disputes related to Precision's liability and the reasonableness of the [*Pridgen*] settlement," and "Precision has no defense to Chapter 82's duty to indemnify innocent sellers."  MCC Br. on its Mot. for Partial Summ. J. 5 ("MCC Summ. J. Br.") (Doc. 171).

On May 2, 2014, AVCO filed Third-Party Defendant AVCO Corporation's Motion for Summary Judgment seeking summary judgment on third-party plaintiff Precision's statutory indemnification claim.  (Doc. 165).  In support of its motion, AVCO argues, among other things, that "[t]he claims by Precision against AVCO/Lycoming fail simply because Precision did not suffer

a loss in a product liability action upon which it can claim indemnity under Chapter 82."  AVCO

Br. in Supp. of its Mot. for Summ. J. 18 ("AVCO Summ. J. Br.") (Doc. 166).

On May, 2, 2014, MCC and AVCO also filed Plaintiff MCC's and Third-Party Defendant

AVCO/Lycoming's Joint Motion to Exclude Defendant/Third-Party Plaintiff Precision's Experts

Elizabeth Erickson and James Erickson ("Mot. to Exclude") (Doc. 168).  MCC and AVCO move

to exclude two of Precision's designated experts, both former Federal Aviation Administration

("FAA") employees, whom Precision designated to provide expert testimony on "how the [FAA]

conducts business to assure the safety of civil aviation."  MCC/AVCO App. to Mot. to Exclude 1

(Doc. 169).  In support, movants argue that these experts are offering legal opinion testimony that

is inadmissible.  Mot. to Exclude 2.

On July 11, 2014, Precision filed its Motion for Summary Judgment Against MCC and

Partial Summary Judgment Against AVCO. (Doc. 220).  In support, Precision argues, among other

things, that it is entitled to summary judgment: (i) on MCC's statutory indemnity claim because,

based on choice of law principles, the court should apply Pennsylvania law, and not Texas law; and

(ii) on MCC's common law indemnification claim, because the *Pridgen* jury's finding of fault on

the part of AVCO, and its award of punitive damages against AVCO, bar MCC (AVCO's assignee)

from pursuing indemnification against Precision in this case.  In addition to seeking summary

judgment on MCC's claims against it, Precision, in its posture as a third-party plaintiff, seeks

summary judgment on its third-party statutory indemnification claim against third-party defendant

AVCO/Lycoming.  In support, Precision argues that: "[B]ecause MCC commenced a 'product

liability action,' because AVCO is a 'manufacturer' of the allegedly defective product, because

Precision is a wrongfully-accused 'seller,' and because there is no evidence of any wrongdoing by

**Memorandum Opinion and Order – Page 7**

Precision, Precision is entitled to summary judgment of liability on its statutory indemnification claim." Precision Br. in Supp. of Mot. for Summ. J. 46-47 ("Precision Summ. J. Br.") (Doc. 221).

All pending motions have been fully briefed and are ripe for decision. The court first turns to the summary judgment motions.

## II.     Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 323; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense

to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

III.    **Analysis**

A.    **MCC's Statutory and Common Law Indemnification Claims Against Precision**

As previously stated, Precision and MCC both move for summary judgment on MCC's statutory indemnification claim against Precision.  Precision also moves for summary judgment on MCC's common law indemnification claim.  The court first addresses Precision's motion.

*1.    Precision's Motion for Summary Judgment Against MCC*

Precision moves for summary judgment on MCC's statutory and common law indemnification claims on the following independent grounds:

1. Texas law does not apply to MCC's claims and for that reason Precision cannot be held liable under the Texas indemnity statute.

2. MCC's indemnity claim at common law fails because it has not alleged and cannot prove, that Precision caused the underlying accident under the applicable common law of Pennsylvania or the common law of Texas.

3. Under any law . . . MCC's losses are barred because they resulted from AVCO's independent fault, which was conclusively established by the Pennsylvania jury verdict.

4. MCC's claim fails even if the Texas statute were applied because Precision did not manufacture any product alleged in the Pridgen complaint to be defective.

5. MCC's claim fails under Texas law because Texas law requires that the Pridgen settlement first be allocated to the punitive damages award against AVCO.

6. MCC lacks standing to bring this action because no claims have been validly assigned to it.

7. MCC's claims against Precision are barred by the applicable statute of repose.

Precision Summ. J. Br. 1-2 (Doc. 221).[3]

---

[3] Because the court concludes that Precision is entitled to summary judgment based on its first two grounds, the court need not consider the remaining grounds.

**Memorandum Opinion and Order – Page 10**

In response, MCC argues, among other things, that Texas law applies to this dispute and that Precision has waived any choice-of-law arguments to the contrary and has consented to application of Texas law. *See* MCC Br. in Supp. of its Resp. to Precision's Mot. for Summ. J. 11-18 ("MCC Resp. Br.") (Doc. 229). MCC further argues that Precision's statutory duty to indemnify it is established as a matter of law because Precision manufactured the allegedly defective carburetor, AVCO was an innocent seller of the engine containing the alleged defective carburetor, and the underlying *Pridgen* lawsuit in which AVCO incurred a loss was a products liability action. *See id.* at 19-36. The court first addresses MCC's contention that Precision waived its ability to raise a choice-of-law argument and consented to application of Texas law.

a.  *Waiver/Consent*

In opposition to Precision's argument that Texas law does not apply to this lawsuit, MCC contends that Precision waived its ability to raise this choice-of-law issue and consented to application of Texas law by filing a third-party statutory indemnification claim against AVCO and by asserting an affirmative defense under Texas law. *See* MCC Resp. Br. 11-12 (Doc. 229); MCC Summ. J. Br. 5 (Doc. 172). With regard to waiver, citing state procedural rules and the court's Scheduling Order, MCC argues that Precision's choice-of-law argument is untimely. This argument fails. In a diversity case, such as this one, a federal court applies state substantive law and federal procedural law. *See Hanna v. Plummer*, 380 U.S. 460, 465 (1965). Precision first pled the inapplicability of Texas law to MCC's indemnity claim in April 2012 in its Answer to MCC's Original Complaint. *See* Doc. 8. In addition, Precision has repeatedly raised its contention that Texas law does not apply to MCC's indemnification action against it. *See* Docs. 112, 120, 197. Further, Precision's choice-of-law argument is not untimely under any provision of the Scheduling

**Memorandum Opinion and Order – Page 11**

Order.  Accordingly, applying federal procedural rules, the court concludes Precision's choice-of-law argument is properly before the court.

With regard to consent, the court finds that Precision's third-party statutory indemnity claim against AVCO is factually and legally distinct from MCC's indemnification claim against Precision, and cannot be construed as consent to the application of Texas law to MCC's indemnification claims.  Moreover, the court rejects MCC's argument that Precision's assertion of the Texas statute of repose as an affirmative defense constitutes waiver.  It is not a waiver for Precision to assert an affirmative defense that, were the court to apply Texas law, other provisions of Texas law bar MCC's claim.  *See generally* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").  Having concluded that Precision has not waived its choice-of-law argument or consented to application of Texas law, the court next addresses the threshold choice-of-law inquiry.

b.      *Choice-of-Law Analysis*

As a threshold matter, the parties disagree about the correct law to apply to this indemnification action.   MCC seeks to apply Texas law and brings a claim for statutory indemnification under Texas Civil Practice and Remedies Code § 82.002.  Precision argues that Pennsylvania law applies. For the reasons that follow, the court finds that, although the indemnification laws of the two states are substantively different, and would result in different outcomes, the "conflict" between Texas and Pennsylvania law is a false conflict, as Texas has no real interest in this lawsuit.  Alternatively, even assuming, *arguendo*, that Texas has an interest in this lawsuit, the court concludes that under applicable choice-of-law principles, Pennsylvania law applies.

**Memorandum Opinion and Order – Page 12**

*i.      Choice-of-Law Principles*

In conducting a choice-of-law analysis, the court first determines whether the applicable laws from the two possibly interested jurisdictions differ.  *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex. 1984)  If no conflict exists, the court need not conduct a choice-of-law analysis.  *See Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002) ("If the laws of the states do not conflict, then no choice-of-law analysis is necessary."); *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 672 (Tex. 2004) ("[W]e must first decide whether Texas law conflicts with the laws of other interested states, as there can be no harm in applying Texas law if there is no conflict.").  If the laws conflict, the court must decide whether federal or state choice-of-law rules apply.  In diversity cases, such as this case, the court applies the choice-of-law rules of the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that courts must apply forum choice-of-law rules in diversity cases).  This court will therefore apply Texas choice-of-law rules.

The court next considers whether an apparent conflict is an "actual conflict" or a "false conflict."  "A false conflict exists if the state with a potentially conflicting law does not have an actual interest in the dispute." *Janvey v. Alguire*, 2013 WL 2451738, at *2 (N.D. Tex. Jan. 22, 2013) (Godbey, J.) (citing *Duncan*, 665 S.W.2d at 422) (finding "false conflict" because only Texas had interest in applying its law).  "A state has an actual interest if the state's relationship to the dispute is within the scope of the policies of the law sought to be applied." *Id.* (citation omitted).  The court now turns to whether the laws of Texas and Pennsylvania conflict.[4]

---

[4] While the accident occurred in Ohio, where the airplane had stopped for fuel en route from Wisconsin to Pennsylvania, neither party argues that Ohio is an interested jurisdiction.  Accordingly, the court will not address Ohio's contacts.

**Memorandum Opinion and Order – Page 13**

*Texas Law*

The Texas Supreme Court has contrasted the common law duty to indemnify with Texas's statutory duty to indemnify, stating as follows:

> At common law, a seller was not entitled to indemnification from a manufacturer unless and until there was a judicial finding of negligence on the part of the manufacturer.  In 1993, the Texas legislature supplemented the common law by enacting Section 82.002, which allows an innocent seller to seek indemnification from the manufacturer of the allegedly defective product. Thus, *under Section 82.002, the manufacturer is now liable to the seller regardless of how the injury action is resolved.*

*Owens & Minor, Inc. v. Ansell Healthcare Prods., Inc.*, 251 S.W.3d 481, 483-84 (Tex. 2008) (emphasis added) (internal footnote and citations omitted); *see also Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999) ("The duty [to indemnify] is a new, distinct statutory duty. . . ."); *FLS Miljo, Inc. v. Munters Corp.*, 682 F. Supp. 2d 681, 688 (N.D. Tex. 2010) (O'Connor, J.) ("Section 82.002, like [] common law indemnity [], requires that the seller seeking indemnity be innocent of any culpable conduct relating to the claimant's harm . . .   However, unlike the common law, a manufacturer's duty to indemnify arises from the injured claimant's pleadings alone [and] *does not require an adjudication of the manufacturer's liability*.") (emphasis added) (internal citations omitted); *compare General Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 255 (Tex. 2006) ("Under the common law . . ., [t]he indemnitor must be liable or potentially liable for the product defect, and his liability must be adjudicated or admitted.") (footnote omitted).

*Pennsylvania Law*

There is no Pennsylvania statute assigning responsibility for the burdens of litigation on the product manufacturer based on pleadings alone, and an adjudication of the manufacturer's liability is required.  Under Pennsylvania law, like Texas common law, the "indemnitee is required to prove

**Memorandum Opinion and Order – Page 14**

his case against the indemnitor in the same way the injured person would have been obligated to do. *Actual legal liability must be shown.*" *Exxonmobil[] Oil Corp. v. Lucchesi*, 2004 WL 1699203, at *3 (E.D. Pa. July 29, 2004) (emphasis added); *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 316 (3d Cir. 1985) ("Under Pennsylvania law, the right to indemnity enures to a person who, without active fault on his own part, has been compelled, by reasons of some legal obligation to pay damages occasioned by the negligence of another.") (internal citations and punctuation omitted); *Automatic Time & Control Co. v. ifm Elecs., GmbH*, 600 A.2d 220, 222 (Pa. Super. Ct. 1991) (holding that there is no indemnification against a defendant manufacturer who is not liable to the original plaintiff in the underlying products liability action).

The court concludes that Precision has shown an actual substantive conflict between Texas statutory law and Pennsylvania law as applied to this dispute. As the above-cited cases demonstrate, under Texas statutory law, a seller is entitled, with limited exceptions, to indemnification from a manufacturer even without an adjudication of negligence on the part of the manufacturer. Under Pennsylvania law, like Texas common law, an adjudication of the manufacturer's liability is a prerequisite to a seller's right to indemnification.

ii.     *Choice-of-Law Contacts*

Having concluded the laws of Texas and Pennsylvania are in conflict, the court must now assess whether the conflict is actual or false. To resolve this question, courts first examine each state's relevant contacts with the litigation. *See, e.g., DeAguilar v. Boeing Co.*, 47 F.3d 1404, 1414 (5th Cir. 1995); *Duncan*, 655 S.W.2d at 421; *Janvey*, 2013 WL 2451738, at *2. For purposes of its present choice-of-law analysis, the court makes the following findings pertaining to Pennsylvania's and Texas's respective contacts with this litigation.

**Memorandum Opinion and Order – Page 15**

Pennsylvania has the following substantial contacts:

• All the *Pridgen* plaintiffs reside in Pennsylvania, except one, who resides in Maryland (Precision Summ. J. App. 43-44, *Pridgen* Am. Compl. ¶¶ 1-4);

• The underlying *Pridgen* lawsuit was filed in Pennsylvania;

• The liability and defense costs for which MCC now seeks indemnification were incurred in Pennsylvania;

• AVCO has its headquarters in Pennsylvania (*id.* at 203, Type Certificate);

• AVCO is alleged to have manufactured the engine in Pennsylvania (*id.* at 45, *Pridgen* Am. Compl. ¶7); and

• Pennsylvania was the intended destination of the subject aircraft (*Pridgen v. Parker Hannifin*, 2006 WL 6314725, at *1 (Pa. Ct. Com. Pl. Apr. 7, 2006) (flight destined for Pottstown, Pennsylvania).

The only Texas contact arguably connected to this lawsuit and the *Pridgen* litigation occurred after the *Pridgen* verdict was reached.  Specifically, the evidence ineluctably leads the court to conclude that AVCO formed MCC as a Texas-based limited liability company solely for purposes of bringing the present lawsuit.  Prior to entry of final judgment, AVCO's insurers settled with the *Pridgen* plaintiffs.  Precision Sealed Summ. J. App. 90-102 (*Pridgen* Settlement) (Doc. 223).  AVCO's insurers then assigned the rights of recovery from the *Pridgen* settlement to AVCO.  MCC Summ. J. App. 263-65; 266-68.  On February 21, 2012, MCC filed a Certificate of Formation in Texas as a limited liability company.  *Id.* at 266-68 (MCC's Cert. of Formation). On February 23, 2012, AVCO then assigned its rights of recovery from the *Pridgen* settlement to MCC, retaining a 75% interest in any recovery made by MCC.  *See id.* at 263-268.  On February 27, 2012, MCC filed this lawsuit against Precision.  On April 10, 2012, MCC's articles of organization were executed by Al Kroemer, MCC's sole member and a partner at Cantey Hanger, the law firm representing AVCO

in this action.  Precision Summ. J. App. 73.  On these facts, the court concludes that the *post hoc*

formation of a Texas limited liability company, MCC, is a manufactured contact, and is entitled to

little, if any, weight.  While MCC argues that this lawsuit has other connections with Texas, the

court concludes these other purported connections either have nothing to do with this action or the

*Pridgen* lawsuit, or are far too attenuated to rise to the level of establishing a Texas connection.  *See*

MCC Summ. J. Resp. Br. 14-15 (Doc. 229).[5]

Having examined the contacts of each potentially interested state with the litigation, the court

finds that Texas has no actual interest in this dispute, that is, it has "no dog in the fight."  Even

though Texas Civil Practice and Remedies Code § 82.002 conflicts with Pennsylvania law, Texas

has no interest in the application of its law.  Therefore, the conflict between Texas and Pennsylvania

is a "false conflict," and the court will apply Pennsylvania law.  On this basis alone, the court

determines that Precision is entitled to summary judgment on MCC's statutory indemnification

claim.[6]

Even were the court to find a true conflict, the court concludes that Pennsylvania has a much

stronger interest in application of its law to this dispute, and that Texas has little to no interest.

---

[5] For example, MCC argues that AVCO signed the *Pridgen* settlement agreement in Texas.  As Precision correctly notes: "[T]he *Pridgen* settlement agreement was negotiated and agreed upon by trial counsel in Pennsylvania, is governed by Pennsylvania law, and was signed by various parties in four different states — including Pennsylvania." Precision Reply Br. 6 (Doc. 234).  *See also* Precision Sealed Summ. J. App. 90-102 (*Pridgen* Settlement Agreement). MCC also cites to an e-mail Precision's counsel in Washington sent to AVCO's counsel about AVCO's indemnity claims.  Even if the e-mail were sent to Texas, which is not at all clear from the record, MCC fails to show how this e-mail is sufficient to establish a significant Texas contact.

[6] The court rejects MCC's argument that subsection (1) of the Restatement mandates application of Chapter 82.  *See* MCC Reply Br. 9-10 (Doc. 212).  This provision states that when choice of law is dictated by statute, the courts must follow the statute.  *See* Restatement § 6(1).  Section 82.002 contains no such directive, and MCC has provided the court with no case in which § 6(1) has been applied to a § 82.002 claim.  In contrast, Precision cites to *Engine Components, Inc. v. A.E.R.O. Aviation Co.*, 2012 WL 666648 (Tex. App.—San Antonio 2012, pet. denied), in which the court applied the Restatement's most significant relationship test, in particular Restatement § 173, to choose the applicable law to indemnity and contribution claims, including claims under § 82.002.

**Memorandum Opinion and Order – Page 17**

Texas applies the "most significant relationship" test as set forth in sections 6 and 145 of the Restatement (Second) of Conflict of Laws (2010) ("Restatement").  *See Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000).  Under this test, the court must consider which state's law has the most significant relationship to the particular substantive issue to be resolved.  *Id.*  In *Hughes*, while recognizing sections 6 and 145 of the Restatement, the court held that "[t]his Court has often applied more specific sections of the restatement to address particular choice of law issues."  *Id.* at 206 n.2.  Section 173 of the Restatement provides that the law "selected by application of the rule of § 145 determines whether one tortfeasor has a right of contribution or indemnity against another tortfeasor."  Restatement § 173.  Section 145 provides that:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.[7]
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
>> (a) the place where the injury occurred;
>>
>> (b) the place where conduct causing the injury occurred;
>>
>> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>>
>> (d) the place where the relationship, if any, of the parties is centered.

---

[7] Section 6(2) of the Restatement requires a court, in the absence of a statutory directive of its own state on choice of law, to consider the following general factors relevant to choice of law: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."  Restatement § 6(2).  "[S]election of the applicable law depends on the qualitative nature of the particular contacts[,]" rather than the "number of contacts with a particular state[.]"  *Duncan*, 665 S.W.2d at 421.

> These contacts are to be evaluated according to their relative importance with respect
> to the particular issue.

Restatement § 145.  With regard to § 145's application to the instant dispute, the court finds

instructive a similar case, cited by Precision, where a Texas court applied the Restatement to

conclude that an indemnitee, seeking indemnification for settlement and defense costs from a Texas

indemnitor for losses incurred in an out-of-state lawsuit, could not rely on Texas's indemnity statute.

*See Engine Components, Inc. v. A.E.R.O. Aviation Co.*, 2012 WL 666648 (Tex. App.—San Antonio

2012, pet. denied).  The first lawsuit was in Wisconsin where the underlying accident occurred and

the original plaintiffs were domiciled.  A.E.R.O. then sued Texas-based Engine Components, Inc.

("ECI") in Texas, seeking to apply the Texas indemnity statute.  The court of appeals found that

Texas law did not apply and rendered a judgment that A.E.R.O. take nothing.  Looking first to § 173

of the Restatement, which in turn directed the court to §145, the court focused primarily on the place

of the injury (Wisconsin) and place of the conduct causing the injury (Wisconsin), finding that:

"A.E.R.O.'s injury as to its indemnity claim occurred when it incurred legal expenses and defense

costs, and paid the Wisconsin plaintiffs a sum to settle the case."  *Id.* at *4.  The court next

"evaluate[d] these contacts according to their relative importance to the indemnity issue" before it,

concluding:

> We believe the policy considerations in section 6 of the Restatement favor
> the application of Wisconsin law to resolve the indemnity issue.  Wisconsin has
> underlying interests in the application of its law, and Texas has few if any interests.
> The product liability suit was not brought in Texas and the plaintiffs were not Texas
> residents.  The product was put into the stream of commerce in Wisconsin, the
> airplane crashed in Wisconsin, and the plaintiffs were Wisconsin residents.  The
> parties litigated their case under Wisconsin law.  The damages sought related only
> to the settlement paid to Wisconsin residents and the fees and expenses incurred in
> litigating the Wisconsin case.  Applying Wisconsin law protects the parties' justified

> expectations and provides certainty, predictability and uniformity of result to
> litigants in all matters related to the main event — the product liability claim.

*Id.* at *5.  As Precision correctly notes, Pennsylvania's interest in the present case is as strong or stronger than Wisconsin's interest in *Engine Components*.  Similar to A.E.R.O.'s injury as to its indemnity claim, the evidence shows that MCC's injury as to its indemnity claim occurred when AVCO (its assignor) paid settlement amounts to the *Pridgen* plaintiffs, three of whom were Pennsylvania residents, in the underlying *Pridgen* lawsuit filed in Pennsylvania and tried under Pennsylvania law.  With regard to Texas's interest in this lawsuit, as already stated, MCC's formation as a Texas limited liability company after the *Pridgen* verdict is entitled to little or no weight in the court's choice-of-law analysis.  Further, allowing a change in law based on the postverdict creation of MCC encourages forum shopping.  *See generally Linden v. CNH America LLC*, 753 F. Supp. 2d 860, 866 (S.D. Iowa 2010) (collecting cases in which courts hold that choice-of-law rules cannot be made to vary based on postaccident moves to jurisdictions with more favorable laws.). In sum, similar to the court's holding in *Engine Components*, the court holds that even assuming Texas has an interest sufficient to create a "true conflict," Pennsylvania law governs MCC's indemnification claim under Texas choice-of-law principles.[8]  Applying Pennsylvania law "protects the parties' justified expectations and provides certainty, predictability and uniformity of result to litigants in all matters related to the main event — the product liability claim."  *Engine Components*, 2012 WL 666648, at *5; *see also Delgado v. Shell Oil Co.*, 231 F.3d 165, 185 (5th Cir.

---

[8] MCC urges the court to ignore the decision in *Engine Components*, arguing that no other court has cited to it and that it is unpublished.  While the assertion that no other court had cited to *Engine Components* at the time MCC submitted its briefing may have been correct, such an assertion is no longer correct, as the Fifth Circuit recently cited to *Engine Components* for its choice-of-law analysis.  *See Janvey v. Brown*, 767 F.3d 430, 435 (5th Cir. 2014).  MCC's attempt to distinguish *Engine Components* is similarly unavailing.

**Memorandum Opinion and Order – Page 20**

2000) ("This court has held that the body of law establishing the indemnitee's primary liability governs his claim for indemnity or contribution against a third party.") (citation omitted).

Accordingly, in addition to concluding that Precision is entitled to summary judgment on MCC's statutory indemnity claim because the conflict between Texas law and Pennsylvania law was a "false conflict," *see supra*, the court alternatively holds that, even assuming a "true conflict," there is no genuine dispute of material fact that Pennsylvania's interest in this lawsuit far outweighs any Texas interest, and Precision is therefore entitled to judgment as a matter of law on MCC's Chapter 82 indemnification claims.[9]

### iii.     *Pennsylvania Law*

Under Pennsylvania law, when the facts show that the liability incurred by the indemnitee (AVCO) could not have been only vicarious or when the indemnitee has "any part in causing the injury," dismissal of the indemnity claim is required. *Sirianni v. Nugent Bros.*, 506 A.2d 868, 871 (Pa. 1986). As explained by the Pennsylvania Supreme Court:

> [U]nlike comparative negligence and contribution, the common law right of indemnity is not a fault sharing mechanism between one who was predominantly responsible for an accident and one whose negligence was relatively minor. Rather, it is a fault shifting mechanism, operable only when a defendant who has been held liable to a plaintiff solely by operation of law seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss.

*Id.*

In this case, the *Pridgen* jury returned a special verdict in favor of the *Pridgen* plaintiffs on all questions, and found that: AVCO had "knowingly misrepresented, concealed, or withheld

---

[9] In its response brief, MCC makes numerous evidentiary objections. The court has not needed to consider any of the evidence to which MCC objects in reaching its decision, and accordingly it **overrules** MCC's objections as **moot**.

required information from the Federal Aviation Administration that is causally related to the harm Plaintiffs suffered"; that AVCO was negligent, and that such negligence "was a factual cause of the accident"; and that AVCO had engaged in conduct "that was malicious, wanton, willful or oppressive, or show[ed] reckless indifference to the interests of others[.]" MCC Summ. J. App. 256-60 (*Pridgen* Verdict ¶¶ 1, 6, 7 & 12).  The jury assigned 100% of the fault for the accident to AVCO, and no fault to the deceased pilot, Lendon Pridgen.  *Id.* (Pridgen Verdict ¶ 10). The jury also found that the "carburetor in the accident aircraft was defective[,]" and that the "defective condition of the carburetor in the accident aircraft was a factual cause of the crash" that resulted in the *Pridgen* plaintiffs' harm.  *Id.* (*Pridgen* Verdict ¶¶ 2 & 3).  The jury awarded the *Pridgen* plaintiffs $88,700,000 in damages, which included $24,700,000 in compensatory damages (*id.* at 259, *Pridgen* Verdict ¶ 11) and $64,000,000 in punitive damages.  *Id.* at 262 (*Pridgen* Punitive Damages Verdict ¶ 1).

On these undisputed facts, MCC is unable to show that its liability was only vicarious or secondary as a matter of law.  *See Sirianni*, 506 A.2d at 871.  One court has even held that a finding of punitive damages precludes a subsequent indemnity action as a matter of law.  *Lynma v. Heller Financial, Inc.*, 2001 WL 474412, at *2 (E.D. Pa. Apr. 30, 2001).  Because Pennsylvania law prohibits indemnity in favor of a negligent tortfeasor, and the jury's special verdict conclusively established that AVCO was not merely vicariously liable, the court concludes that no genuine dispute of material fact remains, and Precision is entitled to judgment as a matter of law on MCC's common law indemnification claim.[10]

---

[10] Even were the case governed by Texas common law, and not Pennsylvania law, the court finds and concludes that, in light of the *Pridgen* special verdict answering all questions in the *Pridgen* plaintiffs' favor and awarding punitive damages, Precision would still be entitled to summary judgment on MCC's common law indemnification claim.  *See*

### 2.    *MCC's Motion for Partial Summary Judgment*

On May 2, 2014, MCC filed a motion for partial summary judgment as to Precision's

liability under Texas Civil Practice and Remedies Code § 82.002 .  MCC argues as follows:

> Because there are no material factual disputes related to Precision's liability
> and the reasonableness of the [*Pridgen*] settlement, MCC respectfully requests that
> the Court grant partial summary judgment for MCC because MCC is entitled to
> indemnity for the settlement amounts and because Precision has no defense to
> Chapter 82's duty to indemnify innocent sellers.  The amount of attorneys' fees and
> costs owed for pursuing this action would be remaining as would MCC's common-
> law-indemnity claims.

MCC Partial Summ. J. Br. 5 (Doc. 172).  In support, MCC makes essentially the same arguments

for application of Texas law as it presents in its response to Precision's motion for summary

judgment (*see* MCC Resp. Br. 11-18, Doc. 229), all of which the court previously addressed (and

rejected) in its analysis of Precision's motion.  *See supra* Sec. III.A.1.  For the reasons stated by the

court in granting Precision's motion for summary judgment on MCC's statutory indemnification

claim, the court will deny MCC's motion for partial summary judgment on the same claim.[11]

Further, granting MCC's motion for summary judgment on its statutory indemnity claim would be

inconsistent with the ruling previously made granting Precision's motion for summary judgment.

### B.    Precision's Third-Party Statutory Indemnification Claim Against AVCO

On April 26, 2012, Precision filed a third-party complaint against AVCO for statutory

indemnity pursuant to Texas Civil Practice and Remedies Code § 82.002.  Third-Party Compl. ¶ 1

---

*Hudiburg*, 199 S.W.3d at 255 ("Under common law, a person is entitled to indemnity for products liability only if his
liability is entirely vicarious and he is not himself independently culpable.  The indemnitor must be liable or potentially
liable for the product defect, and his liability must be adjudicated or admitted.").

[11] Given the court's determination that Texas law does not apply, and that MCC accordingly has no statutory
indemnification claim against Precision, *see supra* Sec. III.A.1, the court need not consider the other grounds upon which
MCC seeks partial summary judgment, as they are similarly premised on application of Texas law.  The court notes that
MCC did not move for summary judgment on its common law indemnification claim.

**Memorandum Opinion and Order – Page 23**

(Doc. 9).  Precision alleges that as an "innocent seller" it is entitled under section 82.002 to "be held

harmless and indemnified by AVCO for all losses arising out of MCC's product liability action and

this Third-Party Complaint."  *Id.* ¶ 29.  AVCO and Precision have filed cross-motions for summary

judgment on Precision's third-party statutory indemnification claim.

AVCO argues it is entitled to summary judgment on Precision's statutory indemnification

claim because:

> (1) Precision did not suffer a loss in a products liability action; (2) Precision is the
> manufacturer of the carburetor at issue; (3) Precision is not an innocent seller; and
> (4) AVCO/Lycoming did not manufacture the carburetor at issue.  Any of these
> grounds alone support summary judgment and the dismissal of Precision's sole claim
> against AVCO/Lycoming.

AVCO Summ. J. Br. 8 (Doc. 166).  Precision argues it is entitled to summary judgment because:

"MCC commenced a 'product liability action,' because AVCO is a 'manufacturer' of the allegedly

defective product, because Precision is a wrongfully-accused 'seller,' and because there is no

evidence of any wrongdoing by Precision[.]"  Precision Summ. J. Br. 46-47 (Doc. 221). Having

considered the parties' legal briefs and controlling law, the court agrees with AVCO that "[t]he

claims by Precision against AVCO/Lycoming fail simply because Precision did not suffer a loss in

a product liability action upon which it can claim indemnity under Chapter 82."  AVCO Summ. J.

Br. 18 (Doc. 166).

Section 82.002 states that a manufacturer shall indemnify a seller against a "loss arising out

of a *products liability action* . . . ."  Tex. Civ. Prac. & Rem. Code § 82.002(a) (emphasis added).

A "products liability action" is statutorily defined as a lawsuit for:

> recovery of damages arising out of personal injury, death or property damage
> allegedly caused by a defective product whether the action is based in strict tort

**Memorandum Opinion and Order – Page 24**

> liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

Tex. Civ. Prac. & Rem. Code § 82.001(2). "[A] manufacturer's duty to indemnify under Chapter 82 is established when the plaintiff is a seller, the party the plaintiff seeks indemnification from is a manufacturer, and the underlying litigation, in which the seller has incurred a loss, is a products liability action." *FLS Miljo, Inc.*, 682 F. Supp. 2d at 689 (citing Tex. Civ. Prac. & Rem. Code § 82.002(a)); *see also Hudiburg*, 199 S.W.3d at 262.

In response to discovery requests from AVCO asking Precision to state the facts that support its contention that this lawsuit is a products liability action, Precision states:

> This action arises out of the underlying *Pridgen* accident and lawsuit, which involved personal injury and death allegedly caused by AVCO's engine. Precision has sustained *losses in this lawsuit* arising from that accident and underlying litigation and seeks recovery in the form of its attorneys' fees and costs incurred in this lawsuit.

AVCO App. in Supp. of Reply 4 ("AVCO App.") (Doc. 216) (Precision's Am. Resp. to AVCO's First Set of Disc., Ans. to Interr. No. 17) (emphasis added). Precision was not a party to *Pridgen*, and admits it is seeking indemnification only for alleged losses incurred in defending this lawsuit. In this lawsuit, MCC seeks indemnification and does not allege any products liability claim against Precision, such as negligence, strict liability of breach of express or implied warranty. *See* Sec. Am. Compl. (Doc. 107). MCC has not alleged any death, personal injury, or property damage; it has alleged only economic harm. *See id.*

On these undisputed facts, the court concludes that Precision is not a seller that incurred a loss in a "products liability action," and therefore has no right to statutory indemnification against

AVCO under Texas Civil Practice and Remedies Code § 82.002.[12]  Accordingly, finding no genuine

dispute of material fact, the court determines that AVCO is entitled to judgment as a matter of law

and will grant AVCO's motion for summary judgment on Precision's third-party Chapter 82

statutory indemnification claims and deny Precision's cross-motion for summary judgment on this

same claim.[13]

> **C.  Plaintiff MCC's and Third-Party Defendant AVCO/Lycoming's Joint Motion to Exclude Defendant/Third-Party Plaintiff Precision's Experts Elizabeth Erickson and James Erickson**

MCC and AVCO have filed a motion to exclude two of Precision's designated experts, both

former FAA employees whom Precision designated to provide expert testimony on "how the [FAA]

conducts business to assure the safety of civil aviation."  MCC/AVCO App. to Mot. to Exclude 1

(Doc. 169).  In support, movants argue that these experts are offering legal opinion testimony that

is inadmissible.  Mot. to Exclude 2.  In response, Precision argues that its experts are entitled to

describe how the FAA regulations "apply to the factual setting of the Pridgen accident" and to

correct erroneous assertions made by "MCC's and AVCO's experts related to the relative duties of

---

[12] Precision's reliance on *Burlington Northern and Santa Fe Railway Company v. Gunderson, Incorporated*, 235 S.W.3d 287 (Tex. App.—Fort Worth 2007, pet. withdrawn) ("*BNSF*"), to support its third-party statutory indemnification claim against AVCO  is misplaced.  As AVCO correctly notes, *BNSF* concerned the definition of "products liability action" in Section 16.012 of the Texas Civil Practice and Remedies Code (the Texas statute of repose), which is broader than the definition of "products liability action"  in Chapter 82.  *See* AVCO Reply Br. 8-9 (Doc. 215). Specifically, Section 16.102 includes "economic damages" in its definition of products liability action, while Chapter 82 does not.  *Compare* Tex. Civ. Prac. & Rem. Code § 16.012 *with* Tex. Civ. Prac. & Rem. Code § 82.001(2).  In its third-party complaint, the only damages Precision alleges it suffered are economic losses (attorney's fees and costs) arising in this litigation.  Further, Precision fails to cite any Texas case involving Chapter 82 that countenances an indemnification claim when the purported innocent seller did not suffer a loss in a products liability action, as statutorily defined.

[13] In its reply brief, AVCO objects to certain evidence upon which Precision relies in its response brief.  *See* AVCO Reply 3-5 (Doc. 215).  As the court has granted summary judgment in favor of AVCO on its primary contention that Precision's third-party complaint is not a "products liability action," the court did not have a need to  consider any of Precision's evidence to which AVCO has objected, and accordingly **overrules** AVCO's objections as **moot**.

**Memorandum Opinion and Order – Page 26**

AVCO and Precision."  Precision Resp. 5 (Doc. 193).  Because the court has concluded that Precision is entitled to judgment as a matter of law on MCC's statutory and common law claims without needing to rely on expert testimony regarding FAA regulations, the court will deny as moot Plaintiff MCC's and Third-Party Defendant AVCO/Lycoming's Joint Motion to Exclude Defendant/Third-Party Plaintiff Precision's Experts Elizabeth Erickson and James Erickson.

## V.       Conclusion

For the reasons herein stated, the court determines: (i) that MCC has failed to raise a genuine dispute of material fact with respect to Precision's liability on MCC's statutory and common law indemnification claims; and (ii) that Precision, in its posture as third-party plaintiff, has failed to raise a genuine dispute of material fact with respect to its third-party statutory indemnification claim against third-party defendant AVCO.  Accordingly, the court: **grants** Precision's Motion for Summary Judgment Against MCC and Partial Summary Judgment Against AVCO to the extent it relates to MCC's claims against Precision and **denies** the motion to the extent it relates to Precision's third-party claim against AVCO (Doc. 220); **denies** Manufacturers Collection Company, LLC's Motion for Partial Summary Judgment (Doc. 170); and **grants** Third-Party Defendant AVCO Corporation's Motion for Summary Judgment (Doc. 165).  MCC's statutory and common law indemnity claims against Precision are **dismissed with prejudice**, and Precision's third-party statutory indemnity claim against AVCO is **dismissed with prejudice**.  Finally, Plaintiff MCC's and Third-Party Defendant AVCO/Lycoming's Joint Motion to Exclude Defendant/Third-Party Plaintiff Precision's Experts Elizabeth Erickson and James Erickson (Doc. 169) is **denied as moot**. As required, a final judgment will issue by separate document pursuant to Federal Rule of Civil Procedure 58.

**Memorandum Opinion and Order – Page 27**

**It is so ordered** this 1st day of June, 2015.

Sam A. Lindsay
United States District Judge